# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN K. HOLCOMB, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | CAUSE NO.: 3:12-CV-705-TLS |

## OPINION AND ORDER

The Plaintiff, John K. Holcomb, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability benefits. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

The Plaintiff applied for Disability Insurance Benefits on October 14, 2009, originally alleging a disability onset date of April 15, 2007, but later amending his claim to allege an onset date of October 14, 2009. The claim was denied initially on January 27, 2010, and upon reconsideration on August 16, 2010. The Plaintiff then requested, and was granted, an administrative hearing. At the time of his hearing, on June 21, 2011, the Plaintiff was 49 years old.

Administrative Law Judge (ALJ) Mario Silva heard testimony from the Plaintiff; Lori Lalone, the Plaintiff's girlfriend; and Richard Fisher, a vocational expert. Using the agency's standard sequential five-step analysis, 20 C.F.R. §§ 404.1520 and 416.920, the ALJ issued a

1

decision unfavorable to the Plaintiff. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 14, 2009, the application date. At step two, the ALJ determined that the Plaintiff's obesity, coronary artery disease, diabetes without complication, obstructive sleep apnea, asthma, moderate depression, panic disorder without agoraphobia, and left shoulder rotator cuff tendonitis were impairments that caused more than minimal limitations in his ability to perform basic work activities. As such, they were severe impairments. The ALJ concluded that the Plaintiff's medically determinable mental impairments of hypertension and carpal tunnel syndrome were not severe.

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in" appendix 1.20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment rises to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." *Id.* at § 404.1520(d). But if the impairment falls short, an ALJ must examine the claimant's "residual functional capacity"—the types of things he can still do physically despite his limitations—to determine whether he can perform this "past relevant work," *id.* at § 404.1520(a)(4)(iv), or, failing that, whether the claimant can "make an adjustment to other work" given his "age, education, and work experience," *id.* at § 404.1520(a)(4)(v). The ALJ determined that the Plaintiff's impairment did not meet or equal any of the listings in appendix 1.

The ALJ described the Plaintiff's residual functional capacity (RFC) as lifting or carrying 20 pounds occasionally and 10 pounds frequently, and sitting/standing/walking 6 hours a day for a combined total of 8 hours per day with normal breaks. The Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch,

and crawl. The Plaintiff had no limits in reaching with his right dominant extremity, but could only occasionally fully extend his left nondominant extremity forward and to the sides. The Plaintiff could never extend his left extremity for overhead reaching, but could frequently engage in gross manipulation with both his right and left extremities. He could occasionally engage in fine manipulation with his left nondominant extremity, and could frequently engage in fine manipulation with his right extremity. The Plaintiff had to avoid even moderate exposure to extreme cold and fumes, odors, dusts, and gases, and to dangerous moving machinery and unprotected heights. The ALJ determined that he must be able to work at a flexible pace, was limited to simple, routine, and repetitive tasks, and was unable to perform work directing others, abstract thought, and planning. The Plaintiff was limited to superficial and no direct interaction with the public and only occasional interaction with coworkers, but with no tandem tasks. The ALJ determined that, considering the Plaintiff's age, education, work experience, and RFC, he could perform the requirements of light, unskilled, occupations, such as marker, routing clerk, and mail clerk, thus defeating his disability claim at step five.

On September 11, 2012, the Appeals Council of the Office of Disability Adjudication and Review denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008); *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

On November 7, 2012, 2013, the Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision. The matter has been fully briefed.

## STANDARD OF REVIEW

In an appeal from the denial of social security benefits, the court is not free to replace the ALJ's appraisal of the medical evidence with its own. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (stating that the court may not reweigh the evidence or substitute its judgment for that of the ALJ). Instead, the court reviews the ALJ's decision for substantial evidence, 42 U.S.C. § 405(g), meaning that the court ensures that the decision rests on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When an ALJ recommends that the agency deny benefits, it must first "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## ANALYSIS

The Plaintiff claims he is disabled and cannot work due to post traumatic arthritis of the left shoulder, knee with replacement, sleep apnea with daytime sleepiness, depression with panic disorder and agoraphobia, diabetes mellitus with peripheral neuropathy, coronary artery disease,

and obesity.

The Plaintiff's argument to this Court is that the ALJ impermissibly substituted his own medical opinion when he considered the Plaintiff's sleep apnea and determined that the Plaintiff was noncompliant with his use of the Continuous Positive Airway Pressure (CPAP) machine. The Plaintiff also argues that the ALJ committed reversible error by failing to analyze the effects of his obesity combined with his sleep apnea and coronary artery disease, and that the ALJ improperly discounted the opinion of the Plaintiff's treating physician.

**A.      Residual Functional Capacity**

In assessing the Plaintiff's RFC, an ALJ is to evaluate the "objective medical evidence and other evidence" to determine whether it is consistent with the Plaintiff's subjective statements regarding his impairment. 20 C.F.R. § 404.1529(a), (d)(3). In general, the claimant is responsible for providing the evidence that the ALJ uses to determine the RFC. 20 C.F.R. § 404.1545(a)(3). Evidence offered must be "complete and detailed enough to allow" the ALJ to make a determination of disability, including the RFC to do work-related physical activities. 20 C.F.R. §404.1513(e). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). But an ALJ must only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The Plaintiff argues that the ALJ erred by determining that the Plaintiff was noncompliant in his use of the CPAP machine and that, as a result, there is not sufficient

evidence in the record to support a finding that noncompliance with prescribed treatment undermined the Plaintiff's claims of debilitating pain and symptoms. Thus, the Plainiff challenges the adequacy of the ALJ's credibility assessment. Related to this, the Plaintiff submits that the ALJ did not properly weigh the opinions of his treating physician, Dr. Katherine Lisoni. The Court will address this argument first.

**1.**   *Medical Opinions*

If a treating physician's opinion on "the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the [ALJ] must give it controlling weight." SSR 96–8p; 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The regulations provide that more weight is generally given to the opinion of treating sources who have (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. 20 C.F.R. § 404.1527(c)(2)(i), (ii). If the ALJ does not give a treating source's opinion controlling weight, the ALJ must consider various factors to determine the weight to assign the opinion. These include the length, nature, and extent of the claimant's relationship with the treating physician; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. 20 C.F.R. § 404.1527(c). An ALJ, thus, may discount a treating physician's medical opinion if it is internally inconsistent or inconsistent

with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). An ALJ may also discount a treating physician's opinion if it reveals bias due to sympathy for the patient. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The ALJ must give "good reasons" to support the weight he ultimately assigns to the treating physician's opinion. 20 C.F.R. § 404.1527(c).

The ALJ's opinion noted the various opinions before him for consideration, which included: the State agency Physical Residual Functional Capacity Assessment completed by medical consultant J. Sands; several statements by treating physician Dr. Lisoni; and the Third Party Function Report and hearing testimony of Lori Lalone, the Plaintiff's girlfriend.

The ALJ assigned little weight to the State Agency Physical Residual Functional Capacity Assessment completed by medical consultant J. Sands, placing the Plaintiff at the full range of medium exertional level work. The ALJ found that the objective evidence of record and testimony supported a more restricted RFC and that the Plaintiff was able to perform less than the full range of work at the light exertional level.

The ALJ considered Dr. Lisoni's opinions regarding the Plaintiff's functional abilities and limitations. In her April 20, 2010, letter, Dr. Lisoni indicated that the Plaintiff was "unable to work even at a sedentary job" due to depression, daytime sleepiness, morbid obesity, and peripheral neuropathy. (R. at 501.) She also stated that his "ability to walk longer distances or perform heavy lifting or more strenuous activity has in the past been limited by his coronary artery disease and likely some degree of deconditioning and restrictive lung disease due to his obesity." (*Id.*) Dr. Lisoni opined that "the above conditions are what I consider to be actually completely disabling in [the Plaintiff's] case." (*Id.*) In her June 8, 2011, letter, Dr. Lisoni

7

reiterated that the Plaintiff "is unable to work due to depression, daytime sleepiness, morbid obesity, and peripheral neuropathy" and that "strenuous activities are limited due to coronary artery disease and obesity." (R. at 550.)

The ALJ assigned very little weight to the statements made by Dr. Lisoni, finding that her opinions were not supported by the objective evidence of record. Specifically, the ALJ noted that Dr. Lisoni "only provided blank statements of disability rather than indicating the [Plaintiff's] functional abilities and limitations" and that Dr. Lisoni's statements opining that the Plaintiff was disabled was a determination reserved to the Commissioner. (R. at 21.) The ALJ took issue with the fact that Dr. Lisoni indicated that the Plaintiff is unable to walk longer distances or perform heavy lifting, but did not indicate what distances the Plaintiff is able to walk or what weight he is able to lift. (R. at 21.)

The Plaintiff argues that the ALJ "is required to give the opinion of the treating physician controlling weight if that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and if the medical opinion is not inconsistent with other substantial evidence in the record." (Pl. Br. at 9, ECF No. 13.) The Plaintiff argues that the two sleep studies performed by Dr. Englert, the cardiac catheterization performed by Dr. Ali, and the psychiatric evaluation performed by Dr. Pelletier confirm Dr. Lisoni's diagnosis of the Plaintiff and demonstrate Dr. Lisoni's statements are consistent with the record. The Commissioner argues that the ALJ properly discounted the opinion of Dr. Lisoni because it was conclusory rather than indicating the Plaintiff's functional abilities and limitations and was not supported by the record as a whole.

The Plaintiff "is not entitled to benefits merely because [his] treating physician said [he]

8

is disabled or unable to work." *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 853 (N.D. Ill. 2006) (citing *Dixon*, 270 F.3d at 1177). Not only is the determination of disability reserved to the Commissioner, "once contrary, competent medical evidence contradicting that of the treating physician is introduced the ALJ no longer gives primacy to the treating physician's opinions and the treating physician's evidence 'is just one more piece of evidence for the administrative law judge to weigh.'" *Rogers*, 446 F. Supp. 2d at 853 (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Here, the record contains objective evidence that is inconsistent with the conclusory assertions made by Dr. Lisoni, thus allowing the ALJ to discount her opinion and treat it as just one more piece of evidence to be weighed. For example, the State Agency Physical Residual Functional Capacity Assessment opined that the Plaintiff could perform at the full range of medium exertional level work. Although the ALJ ultimately found the Plaintiff's RFC to be more restricted than the state agency's opinion in light of the hearing testimony and other objective evidence of record, this opinion, along with other objective evidence of record, was sufficient to enable the ALJ to deny controlling weight to the opinion of Dr. Lisoni and weigh it with the rest of the record. Indeed, the fact that the ALJ ultimately determined the Plaintiff's RFC to be somewhere between that suggested by the state agency and the assertion of disability made by Dr. Lisoni suggests that the ALJ did just that.

      The Plaintiff asserts that the Commissioner is trying to support the ALJ's determination by alleging that Dr. Lisoni offered a conclusory opinion rather than indicating the Plaintiff's limitations. (Reply at 2–3.) However, the Plaintiff's attempt to refute this contention, by arguing that the treatment notes of Dr. Englert and Dr. Ali prove the contrary, is unpersuasive. To be sure, the medical records from the Plaintiff's visits to Dr. Englert and Dr. Ali provide evidence

helpful to determining the Plaintiff's limitations and RFC. However, the RFC "is a determination of the tasks a claimant can do despite her limitations." *Lichtsinn v. Astrue*, 683 F. Supp. 2d 811, 820 (N.D. Ind. 2010) (citing SSR 82–62); *see also Clifford v. Apfel*, 227 F.3d 863, 872 n.7 (7th Cir. 2000) ("'Residual functional capacity'" is that which a claimant can still do despite her physical and mental limitations." (citations omitted)). Dr. Lisoni provided conclusory opinions that the Plaintiff was disabled and unable to work without specifying what the Plaintiff was capable of doing in light of his limitations. The ALJ noted that "Dr. Lisoni indicated that the claimant is unable to walk longer distances or perform heavy lifting, but she does not indicate what distances the claimant is able to walk or what weight he is able to lift." (R. at 21.) An ALJ is not required to accept a doctor's opinion if it "is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (finding that the ALJ reasonably discounted the treating physician's opinion where the treating physician "did not explain his opinion and his treatment notes do not clarify the doctor's reasoning"); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (noting that an ALJ may reject a doctor's opinion that is conclusory and unsupported by evidence). Here, the ALJ was clearly troubled by the brief and conclusory statements Dr. Lisoni made that the Plaintiff was disabled without also providing information regarding what the Plaintiff might be able to do despite his limitations.

The Court finds that substantial evidence exists supporting the ALJ's decision to assign very little weight to the opinion of Dr. Lisoni, the Plaintiff's treating physician, when making his RFC determination. Since the ALJ's determination is grounded in the record and he articulated his analysis of the evidence to "at least a minimum level," *Ray v. Bowen*, 854 F.2d 998, 1002

(7th Cir. 1998), his determination will be upheld.

2.  *Credibility Determination*

The Plaintiff challenges the ALJ's credibility determination, arguing that it contributed to an incorrect RFC determination.

> The ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), but the ALJ is still required to "build an accurate and logical bridge between the evidence and the result . . . ." *Shramek*, 226 F.3d at 811 (internal quotation marks omitted). "In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it." *Id.* (internal quotation marks omitted). Accordingly, we will overturn the ALJ's credibility determinations only if they are "patently wrong." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008).

*Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). The ALJ's written opinion acknowledges the Plaintiff's claims that his conditions cause "difficulty lifting, sitting, walking, and problems with both fine and gross manipulation." (R. at 17.) Additionally, the Plaintiff indicated that "he experiences left shoulder pain, neuropathy in his bilateral arms, fainting, problems sleeping at night, daytime sleepiness, crying spells, and panic attacks." (*Id.*) Despite the Plaintiff's allegations of significant symptoms and functional limitations, however, the ALJ determined that the Plaintiff "has a history of noncompliance with recommended medical treatment, including medication, CPAP machine, and physical and psychological therapy." (R. at 21.)

The ALJ followed a two-step process in considering the Plaintiff's symptoms. First, he "determined whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the [Plaintiff's] pain or other

11

symptoms." (Tr. at 17.) Second, once an underlying physical or mental impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms has been shown, the ALJ evaluated

> the intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the extent to which they limit the [Plaintiff's] functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record."

(*Id.*) The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but determined that the Plaintiff's statements "concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (*Id.* at 18.) In particular, the ALJ found that the Plaintiff had been "consistently non-compliant with recommended medical treatment[,] that he engages in considerable activities of daily living," and that a detailed review of the objective medical evidence reveals "that the [Plaintiff] is not as limited as alleged." (*Id.*)

According to the Plaintiff, "[t]he ALJ determined that [the Plaintiff] was not compliant in the use of the C-PAP machine and that if he complied, his sleep apnea would not be limiting and therefore it does not prevent him from working 8 hours per day 5 days per week." (Pl. Br. at 8, ECF No. 13.) The Plaintiff argues that, in this way, the ALJ was making a medical determination without any medical opinion to support his position. The Commissioner argues that "the ALJ did not state that proper use of [the] Plaintiff's CPAP machine would make it such that his sleep apnea would not be limiting," but rather that the ALJ found the Plaintiff's sleep apnea a severe impairment, albeit not disabling, and restricted the Plaintiff's RFC accordingly. The Court agrees with the Commissioner. The ALJ did not find the Plaintiff fully credible and, as seen below,

found that his noncompliance affected his credibility, but the ALJ did not say that the Plaintiff's sleep apnea would not be limiting if he complied with the use of the CPAP machine.

To refute the ALJ's finding that he was noncompliant with his treatment protocol, the Plaintiff argues that the records of the doctors who examined him confirm that he suffered significant symptoms from his sleep apnea. He asserts that the record does not show willful noncompliance, but reveals the Plaintiff's attempts to use the CPAP machine despite mechanical problems. The Commissioner argues that there is substantial evidence in the record of the Plaintiff's noncompliance, and evidence of improvement of symptoms during times of compliance, to support the ALJ's determination that the Plaintiff was not fully credible and that his functional limitations and symptoms were not as significant as alleged.

The Plaintiff underwent two sleep studies, the first (April 2008) without the use of a CPAP machine and the second (May 2008) with a CPAP. Both the Commissioner and the Plaintiff agree that the first study showed severe sleep disturbance. In the second study, Dr. Englert noted that "[m]ultiple interfaces were attempted including a full face mask and nasal mask and nasal pillows." (R. at 479.) The Plaintiff contends that they tried many different CPAP masks but were unable to get a good result. The Commissioner argues that while some of the Plaintiff's sleep disturbance remained, the nasal pillows resulted in significant improvement. Dr. Englert stated that use of the CPAP mask resulted in "significant improvement but not a complete alleviation" of the Plaintiff's sleep disturbance and that "the apnea-hypopea index was markedly improved to just above the upper limits of normal." (*Id.*)

The Commissioner argues that the record is replete with references to the Plaintiff's noncompliance with the use of the CPAP machine and that the ALJ reasonably found that the

Plaintiff's serial noncompliance undermined his claims of debilitating pain and symptoms. (Response at 6; ECF No. 14 (citing twelve instances where doctors noted the Plaintiff was not using CPAP).) The Plaintiff argues that he was using the CPAP machine as instructed except when there were problems with the machine. The treatment notes from one third of these visits do indicate possible problems and reasons for not using CPAP. (*See* R. at 244 (Plaintiff knocks off CPAP because it bothers him); R. at 249, 303 (not using CPAP because it "dries me out to much" and did not receive humidity attachment); R. at 342 (CPAP broken).) However, the majority of the treatment notes from these office visits simply indicate that the Plaintiff was not using CPAP and instructed him to do so. (R. at 238, 309, 310, 323, 324, 333, 337, 604.)

The Plaintiff further argues that Dr. Ali "opined that he had daytime apnea events in addition to his nighttime events despite the use of the CPAP." (Pl. Br. at 9 (citing R. at 468).) The Commissioner counters that Dr. Ali did not give this opinion, but instead noted the Plaintiff's complaints in the "History and Indication" section of his report before going on to discuss the Plaintiff's noncompliance. Dr. Ali's report notes the Plaintiff's sleep apnea but makes no reference to CPAP, and he does not give an opinion as to the Plaintiff's sleep apnea. (R. at 468.) Rather, the Plaintiff saw Dr. Ali regarding his coronary artery disease and recent catheterization. The ALJ's mentioning of this visit in his opinion was to note Dr. Ali's opinion that the Plaintiff's "medical compliance was severely suspect and that the [Plaintiff] admitted to missing dosages [of medication]." (R. at 18, 468.) Further, Dr. Ali remarked that the Plaintiff's friend indicated that the Plaintiff rarely takes his medications on time. (*Id.*)

The ALJ noted that "[d]espite the [Plaintiff's] allegation of significant symptoms and functional limitations, he has a history of noncompliance with recommended medical treatment,

including medication, CPAP machine, and physical and psychological therapy." (R. at 21.) The ALJ therefore determined that the Plaintiff was not fully credible and that the "objective evidence of records suggests that these symptoms are related to his noncompliance with recommended medical treatment." (R. at 19.) The ALJ remarked that the May 2008 sleep study with use of a CPAP machine showed significant improvement but not complete alleviation of the Plaintiff's sleep apnea, and he also acknowledged that the Plaintiff has a history of not using his CPAP machine because it bothers him and dries him out. (*Id.*) It troubled the ALJ that as late as June 2010, the Plaintiff was not using his CPAP machine. The Plaintiff alleged he was using the machine more in July 2010, which suggested to the ALJ that he still was not using the CPAP machine all the time as he had been directed. (*Id.*) The ALJ's credibility determination was based on more than the Plaintiff's use of the CPAP machine, however. The ALJ noted multiple instances where the Plaintiff was not taking his medications as directed, was not following the diabetic diet prescribed to treat his diabetes, was not recording his blood sugar readings as instructed, and was not attending physical therapy and counseling sessions as directed. (R. at 18–20.) The ALJ specifically noted that the Plaintiff was discharged from physical therapy for noncompliance, and that physical therapy records indicated that the Plaintiff had been doing some snow plowing, suggesting that he was engaged in work activity after his alleged onset day and was not as limited as alleged. (R. at 19.)

A claimant's "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Here, there is sufficient objective medical evidence in the record for the ALJ to find that the Plaintiff has a history of noncompliance with the prescribed treatment meant to alleviate his

symptoms. Furthermore, the record contains objective medical evidence that these treatments, when utilized, provided relief. The ALJ found that the Plaintiff's sleep apnea was a severe impairment but, "after careful consideration of the entire record," the ALJ determined that it was not disabling.

As previously stated, the ALJ's credibility determination is entitled to special deference, and should only be overturned where it is "patently wrong." *Castile*, 617 F.3d at 929. Here, a "commonsensical reading" of the ALJ's opinion gives support to the ALJ's determination that the Plaintiff was noncompliant with his treatments, and there is objective evidence in the record supporting the position that compliance with the prescribed treatments would have provided some relief. Since the ALJ's determination that the Plaintiff is not fully credible is grounded in the record and he articulated his analysis of the evidence to "at least a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir.1988), his determination will be upheld since it is not "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

**B.     Obesity**

Social Security Ruling (SSR) 02-1p provides guidance on SSA policy concerning the evaluation of obesity in disability claims. The Plaintiff argues that the ALJ committed reversible error by failing to analyze the effects of his obesity combined with his sleep apnea and coronary artery disease. The Commissioner argues that the ALJ specifically considered obesity and also considered the combined effect of obesity with the Plaintiff's other impairments.

To support his argument that the ALJ did not consider his obesity in combination with his other impairments, the Plaintiff points out that when the ALJ listed the statutes and SSRs he used

in consideration of the opinion evidence, found on page 17 of the record, he did not specifically include SSR 02-1p in the list. It is true that the ALJ did not specifically mention SSR 02-1p in his list, but that does not necessarily mean that he failed to properly consider obesity in making his RFC determination. Reviewing the ALJ's opinion in its entirety reveals that, although he did not specifically mention SSR 02-1p in his list on page 17, he did consider obesity as it relates to other impairments in the record.

To begin with, the ALJ specifically found that the Plaintiff's obesity was a severe impairment at step two of the analysis. (R. at 14.) Further, the ALJ stated that "Pursuant to SSR 02-1p, . . . obesity was considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling." (R. at 15.) The ALJ also noted that the Plaintiff sought treatment from Dr. Lisoni for morbid obesity, among other things. (R. at 18.) In making his RFC determination, the ALJ considered the opinion of Dr. Lisoni, who opined that "[the Plaintiff] has difficulty walking due to his morbid obesity" and stated that obesity was one of the conditions she "consider[ed] to be actually completely disabling in his case." (R. at 501.) Furthermore, the ALJ specifically noted Dr. Ali's "concern was the [Plaintiff's] obesity and obstructive sleep apnea" when being evaluated for coronary artery disease. (R. at 18.) Finally, the ALJ stated that "[t]he [Plaintiff's] extreme and morbid obesity is noted consistently throughout the record," in which he gave "careful consideration of the entire record" and "considered all symptoms." (R. at 17–18.) In light of the forgoing, the Plaintiff's contention that "[t]here is only one reference in the [ALJ's] decision with regard to [the Plaintiff's] obesity other than to determine that his failure to lose weight was due to noncompliance" is clearly incorrect. (Reply at 3.)

The Plaintiff argues that "[t]he ALJ's opinion that [the Plaintiff's] noncompliance with weight loss is a reason to deny benefits is not supported by substantial evidence." (*Id.*) The ALJ did note that the Plaintiff received recommendations to follow more restricted diets and exercise, and this comment does appear in the section of the ALJ's opinion concerning the Plaintiff's noncompliance and nonadherence to prescribed treatments. (*See* R. at 18–19.) Certainly, obesity is a complex disease that is the result of a combination of factors (e.g., genetic, environmental, and behavioral) and an obese person's failure to lose weight does not necessarily mean that he or she was noncompliant with a dieting regimen. (*See* SSR 02-1p.) However, here the ALJ's comments concerned that the Plaintiff "was noted not to be following the diabetic diet," "was still not taking his medications as directed," "did not know when to check blood sugar, even though it was discussed at length during previous visits," and "was not recording blood sugar readings in his log book as instructed." (R. at 18.) The paragraph in question concerned the ALJ's analysis of the Plaintiff's diabetes; not his obesity. Within this context, the ALJ's comment concerns the Plaintiff's noncompliance with the dietary regimen, medication, and blood sugar reading treatment prescribed regarding his diabetes. Thus, this comment was less concerned with weight loss in particular and more concerned with the Plaintiff's general noncompliance with treatment, here with regard to diabetes, and elsewhere with regard to other impairments. There is substantial evidence in the record to support the ALJ's determination that the Plaintiff was noncompliant with the prescribed treatments for his various ailments. The Court finds that the ALJ's comment concerned noncompliance with diabetes treatments, not weight loss, and does not amount to reversible error.

The Commissioner argues that, even if the ALJ did not specifically consider the

Plaintiff's obesity, any error would be harmless. The Commissioner claims this case is similar to *Skarbeck v. Barnhart*, where the court found the ALJ's failure to explicitly reference the plaintiff's obesity was harmless where the plaintiff did not claim obesity as an impairment and did not specify how his obesity further impaired his ability to work. 390 F.3d 500, 504 (7th Cir. 2004). The Commissioner also cites *Porchaska v. Barnhart*, arguing that implicit consideration through the review and discussion of doctors' reports is enough to avoid remand even if the ALJ fails to explicitly consider the effects of obesity. 454 F.3d 731 (7th Cir. 2006) (holding that the ALJ's failure to discuss obesity was harmless because he relied upon the opinions of physicians who did discuss the plaintiff's weight). The Commissioner argues that the Plaintiff did not cite to any supporting evidence in the record demonstrating that his obesity in combination with other impairments was disabling and that he, therefore, failed to meet his burden. The Plaintiff argues that he did claim obesity as an impairment, making *Skarbeck* inapplicable, and that the ALJ disregarded the opinions of Dr. Lisoni and Dr. Ali and did not rely on their opinions, making *Porchaska* inapplicable.

Here, the ALJ found that the Plaintiff's obesity was a severe impairment. The ALJ also "considered all symptoms . . . to determine the extent to which they limit the [Plaintiff's] functioning." (R. at 17.) The Court finds that the ALJ explicitly considered obesity as it relates to the Plaintiff's other impairments, including sleep apnea and coronary artery disease. The record reflects numerous instances where the ALJ considered the Plaintiff's obesity, both explicitly and implicitly through the opinions of physicians. The ALJ's decision not to rely on the opinions of Dr. Lisoni and Dr. Ali in his RFC determination does not mean he failed to consider obesity when evaluating their opinions. Indeed, the ALJ specifically noted that the Plaintiff's obesity and

obstructive sleep apnea were more concerning to Dr. Ali than coronary artery disease when he saw the Plaintiff after his catheterization. (R. at 18.) Here, even if the ALJ had not explicitly considered the Plaintiff's obesity, he gave it implicit consideration through the physician's opinions, even if he did not ultimately rely upon them. Therefore, the Court finds that the ALJ not only explicitly considered the Plaintiff's obesity, but the implicit consideration of obesity through his review of the physician's opinion makes any error harmless. *See Porchaska*, 454 F.3d 731.[1]

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on September 30, 2014.

                                 s/ Theresa L. Springmann
                                 THERESA L. SPRINGMANN
                                 UNITED STATES DISTRICT COURT
                                 FORT WAYNE DIVISION

---

[1] The Plaintiff also cites to *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1044 (N.D. Ind. 2010), and argues that obesity must be considered with regard to its effects on other conditions and the failure to do so requires remand. However, the "failure to consider the effect of obesity is subject to harmless-error analysis." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing *Prochaska*, 454 F.3d 731 and *Skarbek*, 390 F.3d 500). Here, the Court finds the Plaintiff's argument that *Dogan* requires remand unpersuasive, since the Court finds that the ALJ explicitly and implicitly considered the effects on obesity on the other conditions.